890 So.2d 1263 (2005)
Mamerto IZQUIERDO, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-3492.
District Court of Appeal of Florida, Fifth District.
January 21, 2005.
*1264 Raymond M. Warren of Warren & Warren, P.A., Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Timothy D. Wilson, Assistant Attorney General, Daytona Beach, for Appellee.
TORPY, J.
Mamerto Izquierdo ("Appellant") appeals his judgment and sentence following a jury trial on one count of aggravated assault, a third-degree felony, and one count of misdemeanor battery. Because we conclude that the lower court lacked jurisdiction to adjudicate the unrelated misdemeanor, we reverse as to that conviction. In all other respects, we affirm.
On April 29, 2002, Sheriff's Deputy Bentley was dispatched to the home of Mamerto and Maria Izquierdo. When he arrived, he spoke with Maria Izquierdo ("Maria") who told him that on the evening of April 28, 2002, as she was getting ready for bed, Appellant hit her in the face with a pillow and then hit her on the left arm with an open hand. During his conversation with Maria, Deputy Bentley asked her questions from a Domestic Violence Threat Level Assessment Checklist. Deputy Bentley also spoke with the Izquierdos' granddaughters, 12-year-old J.R. and 11-year-old S.R., who resided with the Izquierdos. J.R. told Deputy Bentley that on April 24, 2002, Appellant had placed a gun against J.R.'s head, cursed at her, and told her to shut up. J.R. expressed that she had been afraid that Appellant was going to shoot her. S.R. told Deputy Bentley that she had observed Appellant point the gun at J.R. and heard him threaten to kill "her and her sisters."
That evening, Maria handwrote and signed an affidavit in which she averred that Appellant had hit her in the face with a pillow and on the left arm with his hand. J.R. and S.R. also wrote and signed affidavits confirming what they had told Deputy Bentley. Maria also gave written permission for deputies to search the premises. The officers found ammunition for.38 and .32 caliber guns, a holster, and a .32 caliber *1265 gun magazine; however, no gun was located on the premises.
An amended information charged Appellant with aggravated assault with a deadly weapon for the incident involving J.R. that occurred on April 24, 2002, and with domestic battery for the incident involving Maria that occurred on April 28, 2002. On October 9, 2002, Maria filed a Request for Dismissal of Charges in which she stated that the charges against Appellant should be dismissed because "he didnt [sic] hurt me really all was only a miss understanding [sic] he is not gilty [sic]." In January, March, and April of 2003, Maria wrote letters to the trial judge and public defender stating that Appellant was innocent of the charges, that he was a loving husband, father, and grandfather, and that her grandchildren were lying.
During trial, Maria was called as a witness by the State. In response to questions by the State, and without objection, Maria testified that she and Appellant had enjoyed a "good relationship," that Appellant was "lovable and tender," a "nice" person, and that he had never been controlling over her, nor had she ever been afraid of him. Again without objection, Maria was impeached on several of these points through inconsistent statements from a prior deposition. As to the specific incidents that gave rise to the charges against Appellant, although seriously impeached through use of the prior inconsistent statements in her deposition and affidavit, Maria partially recanted her prior accusations by characterizing the pillow incident as an accident and recharacterizing the hit on her arm as a "tap." On cross-examination by Appellant's counsel, Maria testified that she had a "wonderful" relationship with Appellant, that her granddaughters never expressed fear of Appellant, and that she had never seen her husband threaten, hit or yell at any of his granddaughters.
J.R. and S.R. both testified consistently with their previous statements to the police. After a one-day trial, the jury found Appellant guilty as charged of both felony aggravated assault (involving J.R.) and misdemeanor battery (involving Maria). The trial court sentenced Appellant to five years in prison on the felony and a concurrent jail sentence on the misdemeanor.
Appellant's first contention on appeal is that the trial court lacked subject matter jurisdiction to adjudicate the misdemeanor charge under Article V, section 20(c) of the Florida Constitution, which provides in pertinent part as follows:
(c)(3) Circuit courts shall have jurisdiction ... of all felonies and of all misdemeanors arising out of the same circumstances as a felony which is also charged....
* * *
(4) County courts shall have original jurisdiction in all criminal misdemeanor cases not cognizable by the circuit courts....
Art. V, § 20(c)(3)-(4), Fla. Const. See also §§ 26.012(2)(d) and 34.01(1)(a), Fla. Stat. (2003).
The State, in response, does not contend that the misdemeanor charge arose from the same circumstances as the felony. Indeed, the two acts were distinct, having occurred on different dates and involving different victims. Instead the State urges that Appellant waived this issue by failing to file a motion to sever the charges pursuant to Florida Rules of Criminal Procedure 3.152 and 3.153.
Under rule 3.152(a)(1), where two or more offenses "are improperly charged in a single indictment or information, the defendant shall have a right to a severance of the charges on timely motion." Under rule 3.153(a), the motion for severance *1266 shall be made "before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for such a motion." Rule 3.153(a) also provides that the right to file a motion for severance is waived if not timely made. Because the grounds for a motion to sever were evident on the face of the amended information, the State contends that Appellant's failure to make a motion to sever results in a waiver of his right to raise this issue on appeal. We disagree.
Rules 3.152 and 3.153 are intended to apply when the offenses are otherwise properly triable in the same court but are improperly joined in a single information because they are unrelated, in violation of Florida Rule of Criminal Procedure 3.150(a). The issue at bar is not the misjoinder of claims, but the trial court's lack of subject matter jurisdiction over the misdemeanor. Clearly, subject matter jurisdiction over the misdemeanor could not be conferred upon the circuit court by waiver or consent. Clayton v. Willis, 489 So.2d 813, 815 (Fla. 5th DCA 1986). Therefore, the judgment and sentence on the misdemeanor count are void.
Appellant next argues that the trial court committed reversible error by allowing Deputy Bentley, on direct examination by the prosecutor, to read specific questions from the domestic violence checklist and Maria's affirmative answers to them. The particular questions asked included whether Appellant: had ever been violent toward Maria; had ever expressed fantasies about or threatened to kill her; had ever used a weapon or threatened her with a weapon; had controlled most of her daily activities; had been violent toward their children or threatened to harm or kidnap them; and, had ever been violent toward any other family member. Counsel objected, arguing that the admission of the testimony violated the "Williams rule" notice requirement, was irrelevant and that its probative value was substantially outweighed by the danger of unfair prejudice. The trial judge permitted the testimony because he believed that the testimony was admissible to impeach Maria's prior testimony wherein she characterized her relationship with Appellant as wonderful, described him as a lovable and nice person and denied that Appellant had been violent towards her or her family.
On appeal, Appellant urges three arguments in support of his contention that error was committed below. First, Appellant asserts that the testimony of Deputy Bentley was inadmissible hearsay. This argument must fail because it was not argued below and because the evidence was offered to impeach Maria, not to prove the truth of the matters asserted. See § 90.608, Fla. Stat. (2004). Second, Appellant argues that the State failed to give notice under section 90.404(2)(c)1., Florida Statutes (2004). This argument also must fail because the evidence was admitted for the purpose of impeachment. Pompa v. State, 635 So.2d 114 (Fla. 5th DCA 1994). Finally, Appellant argues that the introduction of this testimony "violates the rule set forth in Robertson."[1] Although this argument was not raised below, even if properly preserved, we determine it to be without merit.
In Robertson, over valid defense objection, the State asked the defendant about a specific incident of criminal conduct not relevant to the pending charges. When the defendant answered falsely, he was impeached by extrinsic evidence in the form of contradiction. The court held that the State may not ask impermissible questions during cross-examination of an accused and then offer extrinsic evidence of collateral crimes to contradict a false answer. Robertson, 829 So.2d at 913. See *1267 also C. Ehrhardt, Florida Evidence § 608.1 (2004 ed.).
Here, unlike Robertson, the State's initial inquiry, relating to the nature of the relationship between Appellant and Maria, and Maria's feelings about Appellant, was permissible to show Maria's motivation to testify untruthfully about her husband's crimes. § 90.608(2), Fla. Stat. (2004). See also Ehrhardt, supra, § 608.5 (witness's feelings about party relevant to show bias). Moreover, even if this line of inquiry had not been relevant, the facts were tried below by the consent of the parties. Appellant's counsel failed to object when the prosecutor initially elicited testimony through direct examination and during use of Maria's deposition to impeach her on these very same points. Then, on cross-examination, in response to questions from Appellant's counsel, Maria described her relationship with Appellant as "wonderful" and denied knowledge of prior threats made by Appellant against her or her grandchildren. Under these circumstances, we are unable to conclude that the trial court abused its discretion in admitting the evidence for impeachment purposes. See Id. at § 608.1, n. 23.
We have considered and rejected Appellant's other arguments because they are either lacking in merit or not preserved for review. We emphasize that our opinion is limited to the legal arguments properly preserved and presented for appellate review. We remand this cause to the trial court for preparation of a new sentencing scoresheet and resentencing on the felony conviction.
AFFIRMED in part; REVERSED in part and REMANDED.
NOTES
[1] Robertson v. State, 829 So.2d 901 (Fla.2002).